Good morning, all of you. You may all be seated. A couple of things before we get completely underway. First, I'd like to indicate that we are very pleased to have Judge Morrison, England, of the Eastern District of California, sitting with us and lending his wisdom to our proceedings. People sometimes think United Circuit judges don't have enough wisdom, or if we have wisdom, we don't have enough practical sense. We've got it with us today, for sure. Now, let me mention one thing. It's probably obvious to most of you, but there is a clock and it counts down, not up. So watch your time on the clock. We will hold you to the time the case is scheduled for. There are two cases, orders submitted on the briefs, Crummell and Whalen, and those will be orders submitted at this time. And we will call the first case on the calendar, Rust v. Hall. Good morning. And Judge Fernandez. Good morning. And you can hear me, I take it. We can hear you. Can you hear us? Perfectly. Okay. This is Ilana Peterson for Petitioner and Appellant Rust. Your Honors, I don't want to just repeat what's in the briefs, so there are just a few points that I'd like to discuss. First of all, in regards to the Petitioner's Second District Court habeas petition, it is very clear under Woods v. Carey that his habeas petition in the Second District Court case should have been treated as a motion to amend the pleadings because the First District Court habeas proceedings had not been decided yet when he filed that petition. And Respondent has raised various issues in regards to timeliness, but really that's not, that is not really relevant because this case should go back to the District Court. They should treat it as a motion to amend, and it's in the District Court's discretion then to either grant or deny the motion to amend. And issues such as timeliness would be something that the District Court judge would have to decide. But I did state in the briefs that if timeliness was an issue, then any amended petition would be timely because the issues would relate back to the timely petition in the First Habeas case. You say they'd relate back, but they have to have something of a connection to the issues and the facts previously raised. Right. And since we can, theoretically anyway, we can affirm on any basis it would support the District Court's decision that's subtended by the record. Is that a problem here where the new issue, if I might, is a sentencing issue? You shouldn't have enhanced my sentence. And the other issues really don't deal at least directly with sentencing. Is that a problem? No, because basically it does arise from the same set of operative facts in that it all deals with the prior conviction. And all of the prior petitions did mention the prior conviction, although on a different theory, that prior conviction was referenced. And I think in the cases that say that, you know, it was not the same operative facts would be cases where the only similarity is that it was based on the same judgment. And this is much more specific than that, because it wasn't – it was actually referenced, the prior conviction was referenced. So you would say because the prior conviction was referenced with regard to the guilt finding and referenced in the sense of whether the court should have considered or instructed properly, any later reference to the prior conviction at sentencing is related back because it's talking about prior convictions? Well, also they were basically saying there was insufficient evidence for the prior conviction, and that was somewhat similar to the other habeas petitions. So it's just a lot more specific than just dealing with the same judgment. So that's why we believe it does relate back. Okay. And in regards to the jury instruction issue, I did do a 28-J letter because after submitting this reply brief, Gibson v. Ortiz was overruled on one issue, and that was whether the harmless error standard of review applied to that case. But Gibson was not overruled by Byrd in regards to whether there was a due process violation. So just like in Gibson, in this case, there was a due process violation because there were two standards, the preponderance and the beyond reasonable doubt standards that were referenced, which would make it so that the jury could find that the defendant was guilty because he committed the prior offense. So therefore, under preponderance standard, he could be found guilty. But didn't, excuse me, counsel, didn't CALJIC 2.50.02 make the necessary modification to that instruction so that it became clear to the jury that there were two required findings within that instruction? Clearly, there's the issue of evidence code section 1109 and the preponderance being used there from the California standpoint. But once you go beyond that to the beyond a reasonable doubt, wasn't the modification sufficiently clear enough for the jury to find according to the proper standards for both sets? Well, I don't believe so. And the reason is because the Court also referenced 2.50.1, which talked about the preponderance standard. And that was a problem in Gibson, is that the 2.50.1 was used in conjunction with 2.50.1. 2.50.1. Wait a minute. 2.50.01. So that it was the use of the 2.50.1 regarding preponderance and the prior conviction that could have misled the jury. And also the jury have to also look at CALJIC, I believe it's 2.90, which is a standard for reasonable doubt, which defines it specifically what the court what the jury is required to do in making their assessment of the facts and making determination as to the verdict, potential verdict. Yes. They were given that instruction, but also in Gibson they were given that instruction and the Court still found that that wasn't enough because of the use of that extra instruction that wasn't really necessary and confused the issue. And especially in this case, the error is not harmless because in this case we had absent witnesses in the case, you know, the subject offense. And then you had a live witness for the prior conviction. And therefore, the jury, as it was, could give undue weight to the prior conviction in deciding whether the defendant was guilty or the Petitioner was guilty of the incident offense. And so in such a case, the instructional error had a substantial and injurious effect in determining the jury's verdict because the trial court in fact said that there was a real problem with prejudice since we had a paper trial in regards to the incident offense and a live witness in regards to the prior offense. So under the circumstances, I believe that there was a due process violation and the error was not harmless. And in regards to the Confrontation Clause issue, it's obviously that it's obvious there was no reliability or guarantees of trustworthiness, particularized guarantees of trustworthiness, because the female victim was avoiding testifying. She was trying to avoid a charge of possession of marijuana. Two witnesses actually said that she was a liar, a liar. And she was also involved with the other victim while she was involved with the Petitioner. So all those facts show that her testimony was not reliable. And I think the reason why the court had the Robert standard was basically the court believed that cross-examination was not necessary if the out-of-court statements were so reliable that cross-examination, you know, just would not be required. So you have to have a high degree of trustworthiness and reliability. And in this case, obviously, that wasn't the case. And also in regards to the male victim or the male witness, he was involved romantically with the victim, so his testimony also was not reliable. And, in fact, the jury found that the assault charge against that victim, they dismissed the assault charge, which would show that they didn't, you know, believe the testimony of Mr. Barnett. And in regards to this exhaustion issue and the confrontation clause, this Court has clearly stated in Sangeth v. Mass that in order to qualify for Federal Habeas Review, a State prisoner must exhaust all available State remedies, either through direct appeal or through collateral proceedings. And in this case, the issue was exhausted through collateral proceedings. So, therefore, it was exhausted. And I won't get into the whole discussion about procedural default, which was in the briefs, but even a new case that was cited by the Respondent shows that Walteris, Dr. Nolan Walteris. Thank you, counsel. Your time has expired. I'm sorry. Thank you. Good morning. May it please the Court. Deputy Attorney General Matt Mulford on behalf of the two wardens, I guess, in this case. I guess taking the points in reverse order, we'll start with the confrontation issue. The law has changed a lot regarding this constitutional right from the time that this trial occurred in 2000, the Crawford decision in 2004. I think the bottom line is there is a statement by an independent witness that was who testified at this trial. Burton is his name. It's referenced in excerpts of Record 23 and 24. He reported that to the victim, as Keith said, that Rusty came in the room swinging a bat. That was admitted under State hearsay exception of spontaneous statement. There's no question, both before or after Crawford, that this statement should come in at a trial. Before Crawford, it is a firmly rooted exception. After Crawford, it is a non-testimonial statement because this is just a by-law. Rather than arguing it alternatively, though, I understand why you do that, counsel. I mean, isn't it established that Crawford is not retroactive based on the Wharton case? So that aren't we supposed to apply Roberts in this state prisoner habeas setting? The petitioner can only receive the benefit of the pre-Crawford rule. But I don't see anything that prohibits the state from saying the law today is that non-testimonial statements are admissible under the Sixth Amendment. And so we're relying on that fact, that today the law in this country is that non-testimonial statements are admissible under the Sixth Amendment. We have a non-testimonial statement. It should be admissible. It clearly indicates that Mr. Rust was the one who was swinging the bat first. And as far as we're concerned, that renders any error harmless forever. So I don't know. Your briefing was quite zigzaggy. And so is your position in the district court. It appears to me that sometimes you talk Crawford, sometimes you talk Roberts. It's not perfectly clear, at least to me, that the State has said, look, we want Crawford in this case, period, that's the end of it. It sort of wants Crawford and it wants Roberts and it wants this and it wants that, it looks like. So maybe one touches both bases and sees that it works. That seems fine to us. I apologize if our brief was confusing. It wasn't confusing. It was quite precise in going one way sometimes. It wasn't a particle confusing. You were quite clear about what you were saying. Thank you. I appreciate that, I guess. We believe that we can have it both ways, if that clarifies it. This is the criminal law we're talking about. It's society's response to violence. It's not Marcos of Queensbury rules. We're looking at the bottom line. Can we bring the evidence in? Yes, we can. Did he do it? We think he did. We think the jury was entitled to hear it and they did. Maybe we can cut to the breath chase, the harmless air chase. That might be the simplest way to resolve it. But we think the State's entitled to have it both ways. I don't think there's anything wrong with that and that's our position. Apart from the statement of Burton, I'd also like to emphasize that the victim's testimony from her preliminary hearing was under oath and was subject to cross-examination. And so, again, that's evidence that, in our view, comes in under both the old rule and the new rule. We'd like to do it and we think it's good both ways. And so there is no confrontation problem with this case on the merits of that issue. Moving to the next point that counsel raised, the second one, regarding the instructions under 2.50.2 in the Gibson case, we believe that excerpts of record, volume 1, page 42, lines 26 through 28, that highlights the language that distinguishes Gibson and fixes the problem that the Gibson court saw. And so that particular caution to the jury, that they could not use the other crime's evidence to convict, upon a burden of proof of less than a reasonable doubt, solves any problems and so there's no error. And we should be fine with that issue as well. I see I have five minutes left. I'd be happy to talk about exhaustion if the Court is interested. Regarding the third issue, though, the certificate of appealability and the relation back in the woods issue, from where we're sitting, it looks like Mr. Rust has at least four hurdles he needs to clear before we can get back to the district court on that issue. Right now, the certificate of appealability is limited to one procedural issue regarding whether or not that 2006 petition may be treated as a motion to amend the 2004 petition. We don't think you need to answer that question at all because the district court relied on the statute of limitations as an alternative basis for dismissing the 2006 petition. So whatever this Court decides regarding how Woods v. Cary applies to this case, it really doesn't matter because if you sent it back to the district court, they'd just say that this petition was time-barred. Nothing to do, no difference. And so the judgment should rest on the alternative basis found by the district court that there is a statute of limitations problem as to the 2006 petition. We think that ruling is unequivocally correct. That was because the district court didn't think or wasn't even considering relation back because it didn't see it as an amendment, correct? So sure, it's a whole new thing. There's a statute of limitations problem. That's easy. There's a possible statute of limitations problem. That's easy. But if you're having relation back, then it's a different question. It's not exactly statute of limitations. It's timeliness, but timeliness in a procedural sense, right? Perhaps. Perhaps. Perhaps. But if I'd like to, if I may. The relation, okay, relation back, if it comes into it, we don't think it should at all because the statute of limitations, it doesn't matter what the, we talk about because the procedural posture of the issue right now is just statute of limitations. So we would need to broaden the certificate of appealability to consider the statute of limitations question. We would need to broaden the certificate of appealability today to see whether this claim on the merits, which has to do with his claim that there is an illegal sentence, frankly, I don't understand. It's based on some acquitted conduct affects his sentence. But I really don't understand the claim on the merits of the 2006 petition. So from our perspective, there's no reason to grant a certificate of appealability to consider a claim that doesn't have any merit and can't possibly have any merit. Be that as it may, if you send it back, now we're looking at the question of relation back and under the King v. Bryan case and Felix v. Maley or whatever that is from the Supreme Court, this is different. I think the question you asked counsel to begin with, a sentencing issue happens chronologically in the trial at a much later date than the instruction conference and the instructions when they're given to the jury. It happens at a later date when the testimony comes in a trial. It happens at a later date when the prosecutor has the extended discovery responsibilities. And all of these things are different. They are just different for having a common core of operative facts under the test. And so he can't relate back, which just brings us back to the statute of limitations problem. Unless there are questions, I'm prepared to submit. Thank you, counsel. This matter will stand submitted at this time. We thank you both for the argument. Thank you.
judges: Fernandez, Gould, England